IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

BARBARA L. JACKSON,          *

    Plaintiff,          *

vs.          *          CASE NO. 4:09-CV-19 (CDL)

BLUE CROSS AND BLUE SHIELD OF          *
GEORGIA, INC.,
                                 *

    Defendant.          *

                                 *

O R D E R

In this action against her former employer, Plaintiff Barbara Jackson alleges that Defendant Blue Cross and Blue Shield of Georgia, Inc. unlawfully discriminated against her based on her race and disability, retaliated against her for her prior complaints of discrimination, created a hostile work environment, and wrongfully terminated her. Plaintiff alleges that Defendant's conduct violated 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

Defendant seeks summary judgment as to all of Plaintiff's claims. The Court finds that no genuine issues of material fact exist to be tried and that Defendant is entitled to judgment as a matter of law for two separate, independent reasons. First, Plaintiff's claims are barred by the applicable statutes of limitations. Second, even if Plaintiff's claims were not time-

barred, she has pointed to no evidence from which a reasonable finder of fact could find in her favor. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 18) is granted.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

---

[1]Ordinarily, in a case such as this one, where a plaintiff's claims are clearly time-barred, the Court would not make alternative findings that are mere dicta. However, given Plaintiff's *pro se* status, the Court seeks to assure her that her claims have been heard on the merits. Therefore, the Court has taken substantial time to prepare a thorough Order that explains why Plaintiff cannot prevail on the merits.

PROCEDURAL BACKGROUND

Because Plaintiff is proceeding *pro se,* the Court finds it appropriate to outline the measures taken by the Court to assure that Plaintiff understood her obligation to respond adequately to Defendant's summary judgment motion and that she appreciated the consequences of failing to do so. On October 5, 2009, Defendant filed its Motion for Summary Judgment and Statement of Material Facts ("SMF"). In response, Plaintiff filed a Response, Statement of Material Facts, and Surreply. Plaintiff's response to the motion consisted primarily of speculation, opinion, legal conclusions, and assertions unsupported by the evidentiary record. Further, Plaintiff failed to respond to the numbered paragraphs of Defendant's SMF. Finally, Plaintiff indicated that she did not understand the evidentiary requirements to avoid summary judgment. *See, e.g.*, Pl.'s Resp. to Def.'s Mot. for Summ. J. 2, ECF No. 22 [hereinafter Pl.'s Resp.] ("Since Plaintiff is [*pro se*] and not an employee of the law, she did not obtain declarations of her witnesses. Plaint[iff] hopes [the] Court[] will advise if sworn affidavits are needed in this Motion."); *accord* Pl.'s Mem. of Law in Resp. to Def.'s Mot. for Summ. J. 9, ECF No. 22-2 [hereinafter Pl.'s Mem.]; Pl.'s Surreply to Def.'s Reply to Def.'s Mot. for Summ. J. 2, 4, ECF No. 24.

Concerned that Plaintiff did not comprehend the nature of her duty to respond to Defendant's summary judgment motion, the Court

advised Plaintiff of the significance of Defendant's summary judgment motion and explained the evidentiary requirements for avoiding summary judgment. Order for Resp. to Mot. for Summ. J., Feb. 23, 2010, ECF No. 27. Specifically, the Court advised Plaintiff that,

> Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising material issues of fact for trial. Any witness statements must be in the form of affidavits. An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. You may submit your own affidavit and/or the affidavits of others. You may submit affidavits that were prepared specifically in response to Defendant's motion for summary judgment.

*Id.* at 2. The Court further advised Plaintiff that,

> Local Rule 56 requires a motion for summary judgment to be accompanied by a separate document containing a short and concise statement of material facts in numbered paragraphs. Local Rule 56 also requires a party opposing a summary judgment motion to file a separate concise statement of material facts responding to the numbered paragraphs of the moving party's statement. The local rule further requires that the statements of material fact by both parties must include *a reference to that part of the record that supports each statement*.

*Id.* at 3 (emphasis added). Thereafter, Plaintiff filed a Supplemental Response, Answers to Defendant's SMF, and her own twenty-paragraph declaration.

As an initial matter, Defendant objects to the Court's consideration of Plaintiff's declaration to the extent her statements

4

"are not predicated on personal knowledge, are inadmissible hearsay, contain legal conclusions, and are unsubstantiated and conclusory opinion testimony." Def.'s Reply to Pl.'s Supplemental Resp. 7, ECF No. 29. Federal Rule of Civil Procedure 56 provides that an affidavit (or declaration) "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Therefore, "inadmissible hearsay cannot be considered on a motion for summary judgment."[2] *Macuba v. DeBoer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotation marks omitted). Furthermore, conclusory allegations and unsupported opinions in an affidavit lack probative value and will not preclude summary judgment. *See Cornelius v. Home Comings Fin. Network, Inc.*, 293 F. App'x 723, 728 (11th Cir. 2008) (per curiam) ("To have any probative value, affidavits must be supported by specific facts, not conclusory allegations."); *see also Acosta v. Campbell*, 309 F. App'x 315, 318 (11th Cir. 2009) (per curiam) ("[C]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."). Paragraphs 3, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 of Plaintiff's declaration

---

[2]Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

each contain conclusory allegations, speculation, unsupported opinions, and legal conclusions. Further, paragraphs 6, 8, and 16 contain inadmissible hearsay.[3] The Court disregards those portions of Plaintiff's declaration that do not comply with Rule 56.

Plaintiff's Supplemental Response also failed to cite evidentiary support for her litany of factual assertions and legal conclusions. Further, despite the Court's notice, Plaintiff's Answers to Defendant's SMF did not comply with Federal Rule of Civil Procedure 56 or Local Rule 56. First, Plaintiff's responses to Defendant's SMF 1-29 either included no record citation or merely referred the Court back to Plaintiff's Statement of Material Facts, which itself contained no record citations. Therefore, the Court disregards those responses as unsupported by evidence and deems Defendant's statements admitted. M.D. Ga. R. 56 ("All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate."); *see also* Fed.

---

[3]The statements Plaintiff recounts in paragraphs 6, 8, and 16 were being offered for their truth: that Defendant retaliated against Plaintiff; that black women had to "do certain things" to receive promotions; and that Plaintiff's witnesses are afraid to testify for fear they will be terminated. Further, Plaintiff points the Court to no hearsay exception, and the Court can find none, that would allow these hearsay statements to be admitted at trial. *See Macuba*, 193 F.3d at 1323 ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'").

R. Civ. P. 56(e)(2) ("[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Further, Plaintiff did not refute Defendant's SMF 30-38, except to point to evidence that the Equal Employment Opportunity Commission ("EEOC") received a charge of discrimination from Plaintiff on Monday, July 9, 2001—not "Monday, July 8, 2001" as Defendant's SMF mistakenly stated. Therefore, with that one exception, Defendant's SMF 30-38 are deemed admitted. M.D. Ga. R. 56. Finally, in response to Defendant's SMF 39-54, Plaintiff either admitted the statement, or again supplied an unsworn narrative devoid of record citation. Therefore, the Court deems those statements admitted. *Id.* Notwithstanding these "admissions," the Court acknowledges its duty to "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (internal quotation marks omitted). The Court reviewed Defendant's citations to the record and bases its recitation of the facts upon that review, the admissible portions of Plaintiff's March 9, 2010 declaration, and the other evidence Plaintiff submitted in support of her claims.[4]

---

[4]The Court recognizes that Plaintiff is proceeding *pro se*. "Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." *GJR Inv. Inc. v. Cnty. of Escambia,*

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

## I. Plaintiff's Race and Medical Condition

Plaintiff is a fifty-two-year-old black female who has epilepsy. Pl.'s Dep. 39:21-22, 51:19, Mar. 18, 2008, ECF No. 20 [hereinafter Pl.'s Dep. I]; Pl.'s Resp. Ex. 3, EEOC Charge Questionnaire 1, 5, June 4, 2001, ECF No. 22-3 [hereinafter 2001 EEOC Charge].[5] Plaintiff's epilepsy causes her to have grand mal seizures. Pl.'s Dep. I 52:7-10. Plaintiff has, at various times, taken medication to treat her epilepsy. *Id.* at 52:4-6. Despite being diagnosed when she was a teenager, Plaintiff testified that her epilepsy did not affect her ability to attend and participate in the normal activities of

---

*Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). However, this leniency is not without limits. The Court is not required "to serve as *de facto* counsel for a party." *Id.* Furthermore, a party's "*pro se* status in civil litigation generally will not excuse mistakes [s]he makes regarding procedural rules." *Anderson v. Osh Kosh B'Gosh*, 255 F. App'x 345, 348 n.4 (11th Cir. 2006) (per curiam). "Even a *pro se* litigant is required to comply with the Federal Rules of Civil Procedure, particularly after being expressly directed to do so." *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009) (per curiam). Despite the Court's notice, Plaintiff failed to comply with the Federal Rules of Civil Procedure and the local rules of this Court, and she has pointed the Court to no evidence in support of the vast majority of her assertions.

[5]Exhibit 3 to Plaintiff's Response to Defendant's Motion for Summary Judgement is a document purporting to be Plaintiff's 2001 EEOC Charge Questionnaire. Because the document contains non-consecutive pagination, the Court refers to the document's pages sequentially without regard to the document's printed page numbers.

high school and college. *Id.* at 51:25-52:3, 52:17-53:5. Plaintiff further testified that her epilepsy did not affect her job performance prior to her employment with Defendant. *Id.* at 53:6-15. Finally, Plaintiff testified that her epilepsy did not affect her ability to perform her job successfully or otherwise affect her job performance in any way while she worked for Defendant. *Id.* at 54:3-14, 58:4-19, 135:3-12.

## II.  Plaintiff's Employment at Blue Cross

Plaintiff was employed as a Customer Service Representative ("CSR") for Defendant in Columbus, Georgia, beginning in June 1987. Def.'s Mot. for Summ. J. Ex. 1, Wisham Decl. ¶¶ 3-4, Oct. 5, 2009, ECF No. 18-4 [hereinafter Wisham Decl.]; Pl.'s Supplemental Resp. Ex. 1, Pl.'s Decl. ¶¶ 2-3, Mar. 9, 2010, ECF No. 28-2 [hereinafter Pl.'s Decl.]; Pl.'s Dep. I 48:22-49:1. Plaintiff was terminated by Defendant in February 1991. Wisham Decl. ¶ 4. According to Defendant's records, Plaintiff was terminated for violating Defendant's attendance policy. *Id.* ¶ 5. Following her termination, Plaintiff filed a lawsuit against Defendant alleging disability discrimination. Pl.'s Dep. I 54:20-25; Pl.'s Decl. ¶ 3. Plaintiff's 1991 lawsuit was settled pursuant to a confidential settlement agreement, which included a release of all claims. Pl.'s Dep. I 56:19-58:3; Wisham Decl. ¶ 6; Pl.'s Decl. ¶ 4. As a condition of settlement, Plaintiff was reinstated to her position as a CSR for

Defendant. Pl.'s Dep. I 57:11-13, 58:20-59:3; Wisham Decl. ¶ 4; Pl.'s Decl. ¶ 4. When she was first reinstated, Plaintiff was assigned to the Federal customer service unit, which had the same responsibilities as her previous assignment in "regular customer service." Pl.'s Dep. I 59:1-60:13.

After her reinstatement, Plaintiff was promoted to Senior Customer Service Representative. *Id.* at 80:10-81:3, 82:2-22; Wisham Decl. ¶ 8. Plaintiff also received regular pay raises throughout her employment. Wisham Decl. ¶ 7; Pl.'s Dep. I 83:19-84:21. Although Plaintiff claims she was never promoted to a supervisor position, she admits she received a substantial pay raise in 2000. Pl.'s Decl. ¶ 7; Pl.'s Dep. I 84:18-85:2.

## III. Plaintiff's 2001 Termination

By 2000, Plaintiff's direct supervisor was Jacklyn Williams, a white female, who was Service Leader in Defendant's Customer Service Call Center. Pl.'s Dep. I 127:15-128:13; Pl.'s Dep. I Ex. 5, Barbara Jackson 2000 Associate Performance Review & Evaluation Process 5, Jan. 31, 2000 [hereinafter Pl.'s 2000 Performance Review]; Def.'s Mot. for Summ. J. Ex. 2, Williams Decl. ¶ 3, ECF No. 18-5 [hereinafter Williams Decl.]; Wisham Decl. ¶ 26. Plaintiff was also supervised by Barbara Archie, a black female, who was Defendant's Customer Service Call Center Manager and above Williams on Defendant's organizational hierarchy. Pl.'s Dep. I 128:17-24; Pl.'s

10

2000 Performance Review 5; Wisham Decl. ¶ 26; *see* Def.'s Mot. for Summ. J. Ex. 3, Archie Decl. ¶¶ 3-4, ECF No. 18-6 [hereinafter Archie Decl.].

Defendant sets efficiency goals for productivity, timeliness, and quality for all of its CSRs. Williams Decl. ¶ 4. During her tenure with Defendant, Plaintiff occasionally expressed frustration with those goals. *Id.* ¶ 7; *accord* Williams Decl. Attach. A p. 4, Email from B. Jackson to J. Williams, Oct. 6, 2000 [herinafter 10/06 Email]. In March and August 2000, Williams verbally counseled Plaintiff about her efficiency and the quality of her written correspondence. Williams Decl. ¶ 6; Williams Decl. Attach. A p. 1, Employee Counseling Record, Oct. 17, 2000 [hereinafter 10/17 ECR]. Subsequently, Plaintiff sent Williams an email stating that she could not give both good customer service and meet Defendant's efficiency goals.[6] Williams Decl. ¶ 7; Archie Decl. ¶ 5; 10/06 Email. Williams

_____

[6]The full text of Plaintiff's email to her supervisor is as follows:

Jacklyn, I received some of my [Inquiry Replies] back. I thought you all wanted for [sic] to meet stats not real customer service. When you have to meet stats, you can not [sic] give good [customer service]. You can not [sic] have both. On the ones that have more than 3 lines are usually members or prov[iders] that called & sent letters more than once. They can not [sic] understand what they are being told. I feel if you really break it down they can understand it better. I don't have time to do a letter. I can send info to clerks or whoever to do a letter. I will send an outline. Real [customer service] is sending letters & etc[.],[ ]but who has the time due to stats. You even put one in there that you put no comments on. I guess you did not see [sic] top line where it applied to ded [sic]. There was nothing wrong with this. Maybe I should

11

shared Plaintiff's email with Archie, who found it "very inappropriate." Archie Decl. ¶ 5. Consequently, on October 17, 2000, Williams and Archie agreed to issue Plaintiff a written Employee Counseling Record ("ECR") based on overall efficiency and quality.[7] Williams Decl. ¶ 8; Archie Decl. ¶ 6; 10/17 ECR. The ECR required that Plaintiff immediately improve: "[Plaintiff] must meet all goals consistently: 99% efficiency, 99% [q]uality, 99% timeliness in 21 days. 99% of all inquiry replies must be correctly written." 10/17 ECR. The ECR also warned Plaintiff that "[f]ailure to continuously meet goals will result in probation, up to and including termination." *Id.* Williams stated that "[a]fter receiving this [ECR], [Plaintiff]'s efficiency appeared to improve significantly." Williams Decl. ¶ 9.

During this time period, one of Plaintiff's responsibilities for Defendant was to enter and correct coordination of benefits ("COB") information in member files, indicating whether or not the member had other insurance coverage. Pl.'s Dep. I 131:5-11; Pl.'s 2000

---

get for [sic] someone to try to go to a diff[erent] depart. I have enought [sic] to deal with already trying to meet stats everyday. If you all remove these stats, I can give you real [customer service].

10/06 Email.

[7]The stated reasons for issuing Plaintiff a written Employee Counseling Record included: (1) "Failure to meet efficiency goal of 99% – September 2000 = 93.59%[,]" and (2) "70% of inquiry replies contained incorrect sentence structure and grammatical errors[.]" 10/17 ECR.

Performance Review 4; Williams Decl. ¶ 10. As part of the COB entry and correction process, when a CSR updated a member's COB information she was supposed to indicate the source of the information on her communication log.[8] Williams Decl. ¶¶ 12-13. During a January 2001 audit of CSR production logs, Williams noticed that Plaintiff was logging an unusually large number of COB entries. *Id.* ¶ 14; Archie Decl. ¶ 7. Upon further inspection, Williams discovered that Plaintiff was updating COB information in member files and indicating that the member had no other insurance coverage, without supporting documentation. Williams Decl. ¶ 16; Archie Decl. ¶ 7. Williams also found multiple instances where Plaintiff loaded a COB update communication log for multiple members, with supporting data for only one member. Williams Decl. ¶¶ 17-18. Both practices had the effect of inflating Plaintiff's efficiency rating because it would appear that Plaintiff had received notification to update more members' files than she had actually received and had thus completed more tasks. *Id.* ¶ 23. Williams took her findings to Archie, who verified Plaintiff's inappropriate entries. *Id.* ¶ 20; Archie Decl. ¶ 8.

---

[8]If the CSR updated a customer's COB information based on telephone information, she was supposed to indicate on her communication log the person who gave her the information and their relationship to the customer. Williams Decl. ¶ 12. If the COB update was based on written information, the writing's image number would be documented in the communication log. *Id.* ¶ 13.

On January 4, 2001, Archie and Williams met with Plaintiff in Archie's office to discuss their findings. Williams Decl. ¶ 21; Archie Decl. ¶ 9; Archie Decl. Attach. B, Mem. from B. Archie to Y. Wisham Re: Barbara Jackson, Jan. 4, 2001 [hereinafter 01/04 Mem.]. During that meeting, Plaintiff acknowledged updating member files without supporting documentation. Williams Decl. ¶¶ 22-24; Archie Decl. ¶ 10; 01/04 Mem. Plaintiff stated that she did not think her actions were wrong, and she explained that she updated the files to help the customer and to improve her own performance. Williams Decl. ¶¶ 24-25; Archie Decl. ¶¶ 11, 13-14; 01/04 Mem. Archie explained to Plaintiff that entering COB information without supporting documentation was improper and constituted an "integrity issue" that could result in her termination. Williams Decl. ¶ 26; Archie Decl. ¶¶ 12, 15-16; 01/04 Mem.

The following day, Archie, in conjunction with Gail Hunter-Hill, Defendant's Associate Vice President of Customer Service, and Yvonne Wisham, Defendant's Human Resources Manger, decided to terminate Plaintiff because of "ethical issues and falsification of documents." Archie Decl. ¶¶ 18-19; Wisham Decl. ¶ 10. The following Monday, January 8, 2001, Archie, Wisham, and Plaintiff met in the Human Resources offices, and Wisham told Plaintiff she was terminated. Archie Decl. ¶ 20; Wisham Decl. ¶ 11.

## IV. Events Surrounding Plaintiff's EEOC Charges

After her termination, Plaintiff submitted an EEOC charge questionnaire that was received by the EEOC on Monday, July 9, 2001. Pl.'s Resp. Ex. 4, Letter from EEOC to B. Jackson, Aug. 13, 2001, ECF No. 22-3. The EEOC sent Plaintiff a letter on August 31, 2001 informing her that the EEOC had no jurisdiction to investigate her allegations because her EEOC charge questionnaire was not received within 180 days of the last alleged discriminatory act. *Id.* Plaintiff contends that her questionnaire was timely filed and that, if it was late, her former attorney and the United States Postal Service are at fault. *See* Pl.'s Resp. Ex. 4, State Bar of Ga. Grievance Form, Dec. 10, 2001, ECF No. 22-3; Pl.'s Resp. Ex. 10, Letter from P. Frederick, State Bar of Ga. Deputy General Counsel, to B. Jackson, Jan. 20, 2004, ECF No. 22-3. In 2004, Plaintiff submitted a second charge of discrimination to the EEOC. Pl.'s Dep. I Ex. 8, EEOC Charge of Discrimination, Sep. 20, 2004 [hereinafter 2004 EEOC Charge]. The EEOC subsequently issued Plaintiff a Notice of Right to Sue letter ("2004 Right-to-Sue Letter"). Pl.'s Dep., Sep. 24, 2008, ECF No. 21 [hereinafter Pl.'s Dep. II] Ex. 2, EEOC Notice of Right to Sue, Sep. 30, 2004. Plaintiff then filed a Complaint in the Superior Court of Muscogee County, Georgia on January 11, 2005, asserting a violation of the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34-6A-1.

On Plaintiff's motion, the Superior Court entered an order amending Plaintiff's Complaint "to exclude the Georgia Equal Employment for the Handicapped Act (O.C.G.A. Section 34A-6A-1)- [sic] and to include Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 (42 U.S.C. Section 1981), and the Americans with Disabilities Act." Def.'s Notice of Removal Attach. A, Order Granting Pl.'s Mot. to Amend Compl., Feb. 2, 2009, ECF No. 1-2. Defendant removed the action to this Court on February 13, 2009. *See generally* Def.'s Notice of Removal, ECF No. 1.

## V.    Plaintiff's Claims[9]

Plaintiff's Amended Complaint alleges numerous claims under federal statutes that prohibit unlawful discrimination in the workplace: § 1981, Title VII, and the ADA. Although unclear from her Amended Complaint, it appears Plaintiff brings claims for (1) § 1981 race discrimination; (2) Title VII race discrimination; (3) disability discrimination under the ADA; and (4) retaliation and retaliatory discharge under § 1981, Title VII, and the ADA. For the following reasons, the Court finds that Defendant is entitled to summary judgment as to each of Plaintiff's claims.

---

[9]Plaintiff's *pro se* Amended Complaint is not a model of clarity. However, the Court construes Plaintiff's Amended Complaint liberally. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

DISCUSSION

## I.  **Plaintiff's Claims Are Time-Barred**

Defendant contends that Plaintiff's claims are barred by the applicable statutes of limitations.  As explained below, the Court agrees.[10]

### A.  Section 1981 Statute of Limitations

Plaintiff's § 1981 discrimination and retaliation claims are untimely.  The catch-all statute of limitations of 28 U.S.C. § 1658 is four years and applies to actions arising under § 1981 as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.[11]  *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).  The four-year statute of limitations applies to Plaintiff's claims, which relate to her termination and to problems that arose during her employment.  Plaintiff repeatedly stated that January 8, 2001, her last day of employment with Defendant, was the latest date the alleged discrimination and retaliation occurred.[12]

---

[10]The liberal construction given Plaintiff's *pro se* pleadings "does not mean liberal deadlines." *Robinson v. Schafer*, 305 F. App'x 629, 630 (11th Cir. 2008) (per curiam) (internal quotation marks omitted).

[11]A two-year "borrowed" statute of limitations applies to claims that could have been brought under § 1981 prior to the 1991 amendment, which extended "only to the formation of a contract." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989), *superseded by* Civil Rights Act of 1991; *accord Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545-46 (11th Cir. 1988).

[12]Plaintiff's attempt to avoid the § 1981 statue of limitations by making vague, unsupported allegations of post-termination harassment by Defendant's employees is unpersuasive. *See, e.g.*, Pl.'s Mem. 8-9.  Since

Pl.'s Dep. II 12:22-13:2; 2001 EEOC Charge 3, 5; 2004 EEOC Charge.

Plaintiff filed her Complaint in Muscogee County Superior Court on January 11, 2005; she later amended her Complaint to add claims under § 1981.[13]  Def.'s Notice of Removal Attach. B, Ex. A, Compl. for Compensatory Damages & Equitable Relief, Jan. 11, 2005, ECF No. 1-3; *see also* Def.'s Notice of Removal Attach. B, Pl.'s Mot. to Amend, Mar. 20, 2008, ECF No. 1-3.  Because Plaintiff filed her § 1981 claims more than four years after the alleged discrimination and retaliation occurred, Plaintiff's § 1981 claims are barred by the statute of limitations.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1981 claims.

B.  <u>Title VII and ADA Statutes of Limitations</u>[14]

Plaintiff's Title VII and ADA claims are also untimely.  A civil action pursuant to Title VII or the ADA must be filed within ninety days of the claimant's receipt of a right-to-sue letter from the

---

Plaintiff did not point the Court to any evidence supporting her claims of post-termination harassment, the Court disregards those allegations.

[13]The Court assumes only for purposes of summary judgment that Plaintiff's March 2008 Amended Complaint, which added her § 1981 claims, relates back to her original Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

[14]"It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964." *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (citing 42 U.S.C. § 12117(a)); *see also Miller v. Georgia*, 223 F. App'x 842, 844 (11th Cir. 2007) (per curiam) ("The ADA provides the same statute of limitations [as Title VII], as it expressly incorporates the enforcement mechanisms contained in Title VII, 42 U.S.C. § 2000e-5.").

EEOC. *See* 42 U.S.C. § 2000e-5(f)(1).[15] The ninety-day limit runs from the date the letter is received. *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991); *Norris v. Fla. Dep't of Health & Rehab. Servs.*, 730 F.2d 682, 683 (11th Cir. 1984) (per curiam). "Once the defendant contests this issue, the plaintiff has the burden of establishing that [s]he met the ninety day filing requirement." *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002) (citing *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).

Here, Plaintiff filed two EEOC charges, one in 2001 and one in 2004. The EEOC's August 13, 2001 letter to Plaintiff notified Plaintiff that the EEOC's proceedings with regard to the 2001 EEOC Charge had been terminated. Nevertheless, Plaintiff did not file her January 11, 2005 Complaint until years after the ninety-day deadline. Therefore, Plaintiff may not pursue any Title VII or ADA claims based on the 2001 EEOC Charge. Further, since Plaintiff has proffered no evidence of when she received the 2004 Right-to-Sue Letter, Plaintiff

---

[15]42 U.S.C. § 2000e-5(f)(1) provides that where the EEOC does not file suit or obtain a conciliation agreement, the EEOC "shall so notify the person aggrieved and within 90 days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ."

is presumed to have received it on October 4, 2004.[16] *Kerr v. McDonald's Corp.*, 427 F.3d 947, 953 n.9 (11th Cir. 2005) (per curiam) ("When the date of receipt is in dispute, [the Eleventh Circuit] has applied a presumption of three days for receipt by mail[.]"). Plaintiff filed her Complaint ninety-nine days later, on January 11, 2005. Thus, any Title VII and ADA claims based on Plaintiff's 2004 EEOC charge are also untimely. Consequently, Defendant is entitled to summary judgment on Plaintiff's Title VII and ADA claims.

## II. Plaintiff's Claims Fail on the Merits

Even if Plaintiff's claims had been timely filed, Defendant is entitled to summary judgment because Plaintiff failed to produce any evidence supporting her claims.

### A. Plaintiff's § 1981 & Title VII Race Discrimination Claims

Plaintiff brings claims under Title VII and § 1981 for race discrimination. Title VII prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and § 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts," *Ferrill v. Parker Grp.,*

---

[16]The 2004 Right-to-Sue Letter was sent on September 30, 2004, and it is presumed to have arrived three days after it was sent. Because October 3, 2004 was a Sunday, the Court presumes that the letter arrived on the next business day, October 4, 2004.

*Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Plaintiff appears to allege that she suffered disparate treatment and a hostile work environment because of her race. *See* Def.'s Answer Attach. A, Am. Compl. at 7 of 27, ECF No. 2-2 [hereinafter Compl.][17] ("Plaintiff will also show that Defendant violated her Rights under . . . Title VII. . . . Some adverse action done to Plaintiff by Defendant was refusal to rehire, failure to promote, payless [sic], harassment, wrongful discharge, unequal discipline, and adverse transfer."); *id.* at 6 of 27 ("Environmental harassment was done to the Plaintiff by the Defendant. Environmental harassment is harassing conduct [that] creates a hostile environment for the employee."). For the following reasons, Defendant is entitled to summary judgment as to each claim.

### 1. Disparate Treatment Claims

Plaintiff claims that Defendant subjected her to disparate treatment because of her race. "A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). Where, as here, no direct evidence of discrimination exists, the Court uses the framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450

---

[17]Plaintiff's Amended Complaint contains hand numbering on some, but not all, pages. To avoid confusion, the Court refers to the page numbers supplied by the Court's electronic filing system at the top of each page.

U.S. 248 (1981).  Under this framework, a plaintiff bears the burden

of establishing a prima facie case of discrimination.  *Wilson*, 376

F.3d at 1087.  Once the plaintiff has established her prima facie

case, the burden shifts to the employer to articulate a legitimate,

non-discriminatory reason for the allegedly discriminatory action.

*Id.*  This burden has been characterized by the Eleventh Circuit as

"exceedingly light."  *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138,

1142 (11th Cir. 1983).  Once the employer has articulated a

legitimate, non-discriminatory reason for the action, "the

presumption of discrimination is rebutted, and the burden of

production shifts to the plaintiff to offer evidence that the alleged

reason of the employer is a pretext for illegal discrimination."

*Wilson*, 376 F.3d at 1087.  Evidence of pretext may include the

evidence initially offered by the plaintiff to establish her prima

facie case; however, when "the proffered reason is one that might

motivate a reasonable employer, a plaintiff cannot recast the reason

but must meet it head on and rebut it."  *Id.* at 1088.  Throughout

this analysis, the plaintiff retains the ultimate burden of

persuading the trier of fact that intentional discrimination

motivated the employer.  *Id.* (citing *Burdine*, 450 U.S. at 253,

256).[18]

---

[18]The *McDonnell Douglas* framework applies to discrimination claims
under both Title VII and § 1981. *See, e.g., Springer v. Convergys Customer
Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 n.1 (11th Cir. 2007) (per curiam).

A liberal reading of Plaintiff's *pro se* Amended Complaint reveals that she alleges Defendant treated her differently on the basis of her race in the following ways: (1) Defendant denied Plaintiff promotions, Compl. at 7 of 27; (2) Defendant paid Plaintiff different wages than non-black employees, *id.*; (3) Defendant adversely transferred Plaintiff, *id.*; and (4) Defendant engaged in discriminatory discipline, including ultimately wrongfully terminating Plaintiff, *id.* The Court will discuss each claim in turn.

### a.    FAILURE TO PROMOTE CLAIM

To establish a prima facie case of discriminatory failure to promote, a plaintiff must show "(1) that [s]he is a member of a protected class; (2) that [s]he was qualified for and applied for the promotion; (3) that [s]he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997). Other than her status as a member of a protected class, Plaintiff has failed to point the Court to any evidence establishing a prima facie case of discriminatory failure to promote. Accordingly, the Court finds Plaintiff's failure to promote claim is without merit, and Defendant is entitled to summary judgment.

### b. WAGE DISCRIMINATION CLAIM

Plaintiff contends that Defendant discriminated against her on the basis of her race in setting her pay. To establish a prima facie case of race-based wage discrimination, a plaintiff must show that "(1) she belongs to a racial minority; (2) she received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage." *Sumerlin v. AmSouth Bank*, 242 F. App'x 687, 690 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). Again, other than her status as a member of a protected class, Plaintiff has failed to point the Court to any evidence establishing a prima facie case of wage discrimination. Accordingly, the Court finds that Plaintiff's wage discrimination claim is without merit and grants Defendant's motion for summary judgment.

### c. ADVERSE TRANSFER CLAIM

Plaintiff claims that she suffered disparate treatment when Defendant assigned her to Defendant's Federal Government division after her re-hire in 1991.[19] Compl. at 12 of 27, ¶ 22. Even if there were some evidence that Defendant attempted to transfer Plaintiff

---

[19]Defendant also attempted to assign Plaintiff to a different building upon her return, but Plaintiff was ultimately assigned to work in the same building where she had previously worked. Pl.'s Dep. I 62:7-63:3; Pl.'s Decl. ¶ 5 ("They even tried to place me in a department in a different building that was getting ready to be closed. My 1991 attorney, Greg Wolinski, informed me of this. He also stopped this transaction.").

because of her race—which there is not—Plaintiff's reassignment does not constitute an adverse employment action under Title VII or § 1981. To establish a discriminatory adverse employment action, Plaintiff must show "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling." *Id.* Rather, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

A transfer can constitute a discriminatory adverse employment action "if it involves a reduction in pay, prestige[,] or responsibility." *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). Plaintiff, however, has pointed the Court to no evidence that a reasonable person in Plaintiff's position would view her placement in the same position in another department as adverse. *See* Pl.'s Dep. I 59:4-60:13 (stating Plaintiff's duties were similar when she was transferred to Defendant's Federal Government unit). Therefore, Plaintiff's transfer claim is without merit, and the Court grants Defendant's motion for summary judgment.

d. DISCRIMINATORY DISCIPLINE CLAIM

To establish a prima facie case of disparate discipline, a plaintiff must generally show that she was treated differently than

a similarly situated employee. *E.g., Rioux v. City of Atlanta*, *Ga.*, 520 F.3d 1269, 1275-76 (11th Cir. 2008). In cases of discriminatory discipline, "to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). "'[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'" *Id.* (quoting *Maniccia*, 171 F.3d at 1368).[20] Although Plaintiff alleges Defendant disciplined her differently than similarly-situated white employees, Plaintiff has produced no evidence of a "nearly identical[ly]" situated white employee who was disciplined differently. Therefore, Plaintiff has failed to establish a prima facie case of discriminatory discipline and Defendant is entitled to summary judgment.

---

[20]The *Burke-Fowler* court noted that the Eleventh Circuit's "'nearly identical' misconduct requirement was called into question by a later panel decision" which stated that "the law only requires 'similar' misconduct from the similarly situated comparator." *Burke-Fowler*, 447 F.3d at 1323 n.2 (internal quotation marks omitted). The *Burke-Fowler* court reaffirmed that the "nearly identical" standard, as the standard promulgated in the "earliest case," would continue to control in the Eleventh Circuit. *Id.* The Court observes that Plaintiff's claims here fail under either the "nearly identical" or the "similarly situated" standard.

## 2.   Hostile Work Environment Claim

To recover under a hostile work environment theory, Plaintiff must show that:

> (1) [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (alterations in original) (internal quotation marks omitted).  Plaintiff has pointed the Court to no evidence that she was subject to harassment because of her race or harassment that was sufficiently severe or pervasive to alter the terms and conditions of her employment. Accordingly, Plaintiff's hostile work environment claims are without merit, and the Court grants Defendant's motion for summary judgment as to those claims.

### B.   Plaintiff's Title VII Disparate Impact Claim

Plaintiff suggests—fleetingly and without any discussion—that Defendant's employment practices have a disparate impact on black employees.  Compl. at 6 of 27 ("The Defendant is a sophisticated employer who often engages in race discrimination through subtle practices that tend to screen out minority applicants and employees, such as job and intelligence test[s], appearance and dress codes,

27

English-only rules, relying on arrest records in making employment decisions, and discriminatory recruiting practices."). To the extent Plaintiff makes a Title VII disparate impact claim, Defendant is entitled to summary judgment.

Disparate impact discrimination exists when a facially neutral employment policy adversely affects one group more than another and cannot be justified. *See Cooper v. Southern Co.*, 390 F.3d 695, 724 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). To establish a prima facie case of disparate impact discrimination, a plaintiff must show (1) a significant statistical disparity among members of different racial groups; (2) a specific facially-neutral employment policy or practice; and (3) a causal nexus between that specific policy or practice and the statistical disparity. *Id.*

Here, Plaintiff proffered no statistical evidence in support of her disparate impact claim, and she pointed to no specific employment practice that caused a statistical disparity among members of different racial groups. Consequently, Plaintiff failed to establish a prima facie case of disparate impact discrimination. Defendant is entitled to summary judgment on Plaintiff's disparate impact claim.

C.  Plaintiff's Disability Discrimination Claim

Plaintiff claims Defendant discriminated against her because of her medical condition—epilepsy—in violation of the ADA.[21]  The courts use the *McDonnell Douglas* framework to analyze ADA claims.  *E.g., Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000).  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that (1) she has a disability; (2) she is able to perform the essential functions of her job; and (3) her employer unlawfully discriminated against her because of her disability.  *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000).

---

[21]The ADA Amendments Act of 2008, which changes the definition of the term "disability" under the ADA, became effective on January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553 (2008) ("ADAAA").  However, even if Plaintiff's epilepsy were considered a disability under the ADAAA, the events at issue here occurred in 2001 or earlier, and courts addressing the issue have held that the ADAAA does not apply retroactively.  *See, e.g., Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2009); *Herzog v. Loyola Coll. in Md., Inc.*, Civil Action No. RDB-07-02416, 2009 WL 3271246, at *5 n.3 (D. Md. Oct. 9, 2009) (collecting cases).  The Eleventh Circuit Court of Appeals has not addressed this issue in a published opinion.  *See Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 25 n.5 (11th Cir. 2009) (per curiam) (noting lack of Eleventh Circuit published opinion on issue and finding it unnecessary to address question).  However, one unpublished decision suggests that the Eleventh Circuit declines to apply it retroactively.  *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) (per curiam) ("[A]bsent Congressional expression to the contrary, a presumption against retroactive application applies when the new legislation would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.  So, we look to the ADA as it was in effect at the time of the alleged discrimination." (internal quotation marks omitted)).  Plaintiff makes no argument that the ADAAA should apply retroactively.  Therefore, this Court applies the pre-ADAAA provisions of the ADA and accompanying regulations herein.

The initial inquiry is whether Plaintiff's epilepsy constitutes a disability under the ADA. As it is defined in the Act, the term "disability" includes: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (2005). An individual who satisfies any one of these three definitions is considered disabled. *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996). Here, Plaintiff claims that she has a physical impairment that has substantially limited a major life activity and that Defendant regarded her as having such an impairment. The Court disagrees.

First, although Plaintiff's epilepsy constitutes a physical impairment, Plaintiff fails to point the Court to any major life activity that her epilepsy substantially limits.[22] Further, by Plaintiff's own admission, her seizures are infrequent and controlled with medication. Pl.'s Supplemental Resp. 9 ¶ 44 ("[Seizures] would happen from time to time, but not that often. As long as Plaintiff took her medication, she usually had no problems."); *accord* Pl.'s

_____

[22]Although the pre-ADAAA ADA did not define "major life activities," the Eleventh Circuit and Supreme Court frequently looked to the EEOC regulations when construing the ADA. *E.g., Rossbach v. City of Miami*, 371 F.3d 1354, 1357 n.4 (11th Cir. 2004) (per curiam). The pre-ADAAA regulations provide that "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Dep. I 52:4-6, 135:8-12, 155:3-21. The Eleventh Circuit Court of Appeals has held that where epileptic seizures are "infrequent, not severe, and controlled with medication[,]" they do not substantially limit a major life activity. *Sicilia v. United Parcel Serv., Inc.*, 279 F. App'x 936, 938 (11th Cir. 2008) (per curiam). Finally, Plaintiff expressly stated that her epilepsy does *not* substantially limit her in the major life activity of working. Pl.'s Dep. I 53:6-15, 54:3-14, 58:4-19, 135:3-12. Consequently, Plaintiff has failed to establish that her epilepsy substantially limits a major life activity.

Second, Plaintiff failed to direct the Court to any evidence Defendant regarded her as having a disability.[23] Therefore, Plaintiff has failed to establish she was "regarded as" disabled.

Since Plaintiff failed to point to evidence supporting her allegations that she was actually disabled or that Defendant regarded her as such, she has failed to establish a prima facie case of discrimination, harassment, or retaliation under the ADA. Accordingly, Defendant is entitled to summary judgment on all of Plaintiff's ADA claims.

---

[23]"[A] person is 'regarded as' disabled within the meaning of the ADA if [her employer] mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1228 (11th Cir. 2005) (internal quotation marks omitted).

Furthermore, even if Plaintiff's epilepsy qualified as a "disability" under the ADA, Plaintiff failed to point the Court to any evidence that Defendant unlawfully discriminated against her *because of* her epilepsy. Plaintiff's ADA claims thus fail on this ground, as well.

D. Plaintiff's Retaliation Claims

Plaintiff bases her retaliation claims on numerous incidents, perceived slights, and, ultimately, her 2001 termination; she contends that all of these actions were taken in retaliation for her 1991 lawsuit. The *McDonnell Douglas* framework applies to Plaintiff's retaliation claims under the ADA, Title VII, and § 1981. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). Since Plaintiff's retaliation claims are all based on the same alleged actions and since the legal analysis for retaliation claims is the same under § 1981, Title VII, and the ADA, the Court addresses Plaintiff's retaliation claims together. For the following reasons, Plaintiff's retaliation claims fail.

1. *Plaintiff's Prima Facie Case*

To prevail on her retaliation claims, Plaintiff must establish a prima facie case of retaliation by showing that: "[s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was a causal relation between the two events."

*Goldsmith*, 513 F.3d at 1277. The Court assumes that Plaintiff engaged in statutorily protected conduct when she filed her 1991 lawsuit and that she suffered a materially adverse action when she was terminated ten years later, but Plaintiff has failed to establish a causal connection between the two events.

To establish the requisite causal connection, "the plaintiff must prove 'that the protected activity and the adverse action are not completely unrelated.'" *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008) (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998)). "[M]erely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element . . . ." *Id.* A plaintiff may satisfy the burden of causation "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam). In the absence of other evidence tending to show causation, temporal proximity must be "very close." *Id.* (citation omitted). "A three or four month disparity between the protected activity and the adverse employment action is not enough" to show "very close" temporal proximity. *Id.; see Higdon v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (holding that three-month

interval between protected activity and adverse act is too long, standing alone, to establish an inference of retaliation).

Here, Plaintiff has failed to point the Court to any evidence showing a causal connection between the protected activity—her 1991 lawsuit—and her 2001 termination.[24]  Further, given the ten-year gap between Plaintiff's 1991 lawsuit and her 2001 termination, there is no "very close" temporal proximity between the protected activity and the adverse employment action. *See, e.g.*, *Thomas*, 506 F.3d at 1364 (holding that a three-to-four-month period between the protected activity is not enough to show "very close" temporal proximity). Therefore, Plaintiff has failed to establish a prima facie case of retaliation, and Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

### 2.  Legitimate, Non-Retaliatory Reason

Even if Plaintiff had established a prima facie case of retaliation, Defendant would then have "an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment

---

[24]Plaintiff contends that Defendant began retaliating against her immediately after her reinstatement in 1991 by transferring her to a different department.  As discussed above, the transfer did not alter Plaintiff's job responsibilities or her pay, and Plaintiff has pointed to no evidence from which the Court can conclude that a reasonable employee would have found the transfer materially adverse such that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).  Plaintiff points to no other evidence of any alleged adverse action that took place within months of her reinstatement.

action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If Defendant accomplishes this, Plaintiff "bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by [Defendant] is a pretext for prohibited, retaliatory conduct." *Id.* Here, Defendant has articulated a legitimate, non-retaliatory reason for Plaintiff's 2001 termination: Plaintiff falsified COB information. Plaintiff has not produced evidence that Defendant's legitimate, non-retaliatory reason was a pretext for retaliation. Therefore, for this additional reason, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 18) is granted.


IT IS SO ORDERED, this 2nd day of August, 2010.


                                    S/Clay D. Land
                                        CLAY D. LAND
                                UNITED STATES DISTRICT JUDGE